IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVANTE BARKLEY,  :
   Movant,  :
  :
  :  CRIMINAL NO.
v.  :  1:13-CR-0186-SCJ-RGV-4
  :
UNITED STATES OF  :  CIVIL ACTION NO.
AMERICA,  :  1:15-CV-3818-SCJ-RGV
  :
  Respondent.  :

## ORDER

This matter appears before the Court for consideration of the May 25, 2016, Report and Recommendation ("R&R") (Doc. No. [175])[1] in which The Honorable Russell G. Vineyard, United States Magistrate Judge, recommended that the Court deny DeVante Barkley's 28 U.S.C. § 2255 Motion, as amended (Doc. Nos. [130], [143]). Barkley has filed objections to the R&R (Doc. No. [185]), as well as a second motion to amend his §2255 Motion (Doc. No. [181]), and this matter is now ripe for consideration.

I.   BACKGROUND

Barkley and three co-defendants were indicted on various counts of armed robbery. In particular, Barkley was charged in Count One with conspiracy to affect

---

[1] The citations in this order are to the criminal docket: 1:13-CR-0186-SCJ-RGV.

commerce by robbery, in violation of 18 U.S.C. § 1951(a); in Counts Two and Four with affecting commerce by robbery, in violation of § 1951(a); and in Counts Three and Five with knowingly using a firearm in furtherance of the charged robberies, in violation of 18 U.S.C. § 924(c)(1)(A). Doc. No. [40]. Barkley's appointed counsel filed a motion to suppress Barkley's post-arrest statements to Federal Bureau of Investigation ("FBI") agents on the grounds that Barkley was not given a Miranda[2] warning, that his confession "was not knowingly, freely and voluntarily made," and that he did not waive his right to counsel before making the statements. Doc. No. [66], p. 1. However, counsel subsequently withdrew the motion after Barkley entered plea negotiations with the Government. Doc. No. [77].

Barkley eventually entered a plea agreement with the Government whereby he agreed to plea guilty to Counts Four and Five, the Government agreed to dismiss all remaining counts, and both parties agreed to jointly recommend a total sentence of 108 months confinement. Doc. No. [89-1]. The plea agreement was "offered, in part, in consideration of [Barkley's] cooperation," and the Government further agreed to recommend that Barkley receive an acceptance of responsibility reduction to his offense level. Id. pp. 5–6. The plea agreement set forth the statutory maximum

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

and minimum penalties for both counts to which Barkley pled. Id. pp. 3-4. Barkley signed the agreement, indicating he understood and voluntarily agreed to the terms, free from any threats or promises, and that he was "fully satisfied with the representation provided to [him]." Id. p. 20.

At the plea hearing, Barkley was placed under oath and advised by the Court that he could be prosecuted for perjury if he made any false statements. Doc. No. [135-3], pp. 2-4. He was informed of his right to plead not guilty, to have a jury trial, to have counsel, to cross-examine the Government's witnesses, to call his own witnesses, and of his right against self-incrimination. Id. pp. 5-6. Barkley indicated that he understood these rights, and that he understood he was waiving them by pleading guilty. Id. pp. 5-7. The Government then summarized the terms of the plea agreement, laying out the minimum and maximum penalties for each charge, the maximum fines, and the mandatory special assessments. Id. pp. 8-10. Barkley indicated that he understood the plea agreement, as outlined by the Government, and that no one had made any other promise to induce him to enter the agreement. Id. pp. 11-12. He also indicated that he understood the fines and penalties associated with the offenses he committed, and that he understood the Court may order restitution to the victims. Id. p. 12.

Barkley's counsel stated that he advised Barkley regarding the admissibility of his confession, and that Barkley was not pleading guilty as a result of any illegally obtained evidence in the possession of the Government. See id. p. 13. Barkley stated that he had sufficient time to discuss all matters fully with his attorney, and that he was satisfied with the representation of his attorney. Id. p. 14. The Government then laid out the elements of the offenses with which Barkley was charged, and Barkley stated that he understood the charges. Id. pp. 15–16. In his own words, Barkley described the charges as "[b]randishing a firearm and armed robbery." Id. p. 16. The Court explained its obligation to calculate a Sentencing Guidelines' range, and that Barkley's sentence could be more or less severe than the sentence called for by the guidelines. Id. pp. 16–17. Barkley indicated that he understood. Id. p. 17.

Repeatedly during Barkley's guilty plea, the Court asked him if he was entering his plea freely and voluntarily, and if anyone had threatened or forced him to plead guilty. Id. pp. 7, 17–18. Each time, Barkley stated that he entered his plea freely, knowingly, and voluntarily. Id. The Court then reviewed the terms of the appeal waiver contained in the plea agreement, and Barkley agreed that he understood the effect of the appeal waiver and that he was freely and voluntarily giving up his right to appeal. Id. at 17–18.

4

The Government then described the factual basis for Barkley's plea. <u>Id.</u> pp. 18–21. On December 27, 2012, Barkley and four accomplices, driving in a car provided by Barkley, robbed a McDonald's in Sandy Springs, Georgia. <u>Id.</u> p. 19. Two of Barkley's accomplices—armed with an "airsoft gun" and a .38 Colt pistol—climbed in through the drive-through window and robbed the employees at gunpoint of approximately $2,000 in cash. <u>Id.</u> As the men left the scene of the Sandy Springs robbery, Barkley's co-defendant discharged the firearm. <u>Id.</u> p. 20. Believing that the proceeds from this robbery were not enough, Barkley and his accomplices decided to rob another McDonald's, in Fairburn, Georgia, the same night. <u>Id.</u> During this robbery, Barkley climbed through the drive-through window with two of his accomplices. <u>Id.</u> The surveillance footage, as well as the testimony of the McDonald's employees and Barkley's own co-defendants, would have established that Barkley participated in this robbery. <u>Id.</u> pp. 20–21. During the Fairburn robbery, one of Barkley's accomplices brandished the handgun, and the men stole approximately $1,500 in cash. <u>Id.</u>

Barkley agreed with the Government's summary of the events, and admitted that he was in fact guilty of the charges in the indictment. <u>Id.</u> pp. 21–22. Pursuant to the plea agreement, he pled guilty to Counts 4 and 5 of the indictment, which

5

pertained only to the Fairburn robbery. Id. p. 22. Barkley stated that he did not have any questions regarding any of the matters discussed during the proceeding, and the Court accepted his guilty plea. Id. pp. 22–23. Barkley was eventually given a total sentence of 108 months of imprisonment, the amount agreed upon by the parties. See Doc. No. [132], p. 16; Doc. No. [101]. Barkley did not file a direct appeal. Subsequently, he timely filed a *pro se* § 2255 Motion, and has twice filed motions to amend his §2255 Motion. Doc. Nos. [130]; [143]; [181].

## II.   LEGAL STANDARD

### A.   General Standards

A federal prisoner may file a §2255 motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Unless a § 2255 motion and the files and records of the case "conclusively show" that the federal prisoner is not entitled to post-conviction relief, the district court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b); Anderson v. United States, 948 F.2d 704, 706 (11th Cir. 1991). The Court need not hold an evidentiary hearing if the allegations are "affirmatively contradicted by the record, or the claims

are patently frivolous." <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982).

**B.    Ineffective Assistance of Counsel**

To demonstrate that trial counsel's assistance was so defective that it requires reversal, Barkley must show that: (1) his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under the performance prong, counsel's representation is judged by a standard of "reasonableness under prevailing professional norms," and there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." <u>Id.</u> at 688-89, 104 S.Ct. at 2065. If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (*en banc*). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. <u>Id.</u> at 1314.

Under the prejudice prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Generally, the burden is on the movant pursuing an ineffective-assistance-of-counsel claim to demonstrate prejudice. See Purvis v. Crosby, 451 F.3d 734, 743 (11th Cir. 2006) (noting that a prisoner must establish prejudice in order to succeed on an ineffective-assistance claim, even if there was a structural error in the criminal proceedings). Once a court has determined that the defendant fails to establish either the performance or prejudice prong, it need not address the remaining prong. Strickland, 466 U.S. at 697; see also Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (noting that because both parts of the test must be satisfied to show a Sixth Amendment violation, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice-versa).

### III. ANALYSIS

In his initial § 2255 Motion, Barkley raised two grounds for relief. In Ground One he asserts that "the [C]ourt failed to" follow Fed. R. Crim. P. 11(b). See Doc. No. [130], p. 13. In Ground Two he asserts that his counsel was ineffective for: (a)

AO 72A
(Rev.8/82)

"fail[ing] to explain each and every fundamental constitutional right" that Barkley waived by pleading guilty, (b) "fail[ing] to make a timely objection to the factual basis [for the plea], on the grounds that it was inadequate," and (c) withdrawing the motion to suppress Barkley's confession. Id. pp. 13–14.

Barkley filed a Motion to Amend his § 2255 Motion, which was granted by the Magistrate Judge. See Doc. No. [142]; Doc. No. [175], p. 15. His amended motion added Ground Three, in which he argues that the statements he made to the FBI agents on January 14, 2014 "were obtained through coercion and duress" and that the document he signed indicating that he understood and agreed to waive his rights before speaking to the agents was also "the product of coercion and duress." Doc. No. [143], p. 2.

Barkley has since filed another Motion to Amend his § 2255 Motion. Doc. No. [181]. He seeks to add a fourth ground, arguing that "in light of the Supreme Court's decision in [Johnson v. United States, 576 U. S. ___, 135 S. Ct. 2551, 2553, 192 L. Ed. 2d 569 (2015)]" his conviction under 18 U.S.C. § 1951(a) does not qualify "as a crime of violence to support his conviction and sentence enhancement under [18 U.S.C. § 924(c)(1)(A)(ii)]." Doc. No. [182], p. 2.

A. <u>**Grounds One and Three**</u>

The Magistrate Judge concluded that Grounds One and Three of Barkley's § 2255 motion are procedurally barred. Doc. No. [175], pp. 9–10. Barkley fails to object to the Magistrate Judge's conclusion that Ground Three is procedurally barred, and thus abandons this claim. <u>See</u> Doc. No. [185]. He argues that Ground One is not procedurally barred because that ground "challenges the validity of [his] guilty plea." <u>Id.</u> p. 5. However, the cases he cites in support of his argument deal with appeal waivers, and do not address whether a § 2255 claim is procedurally barred. <u>See United States v. Orozco-Picazo</u>, 391 F. App'x 761, 769 (11th Cir. 2010) (reviewing, on direct appeal, defendant's claim his plea lacked a factual basis, despite the appeal waiver); <u>Patel v. United States</u>, 252 F. App'x 970, 975 (11th Cir. 2007) (holding that, because the movant challenged the validity of his guilty plea, "the district court erred in dismissing [the movant's] claim based on a finding that it was barred by the appeal waiver").

The Magistrate Judge correctly noted that Barkley's claim was not barred by his appeal waiver. <u>See</u> Doc. No. [175], p. 9 n.3. It is precisely because Barkley could have raised Ground One on direct appeal, but did not, that Ground One is now procedurally barred in his § 2255, unless he can show cause and prejudice or a

fundamental miscarriage of justice. See Frady, 456 U.S. at 167–68; Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). This he cannot do.

To show cause, Barkley can show that "some objective external factor impeded counsel's efforts" to assert the claim, or that his counsel's failure to assert the claim fell below Strickland's standard for effective assistance of counsel. See Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)); see also United States v. Nyhuis, 211 F.3d 1340 (11th Cir. 2000). Barkley does not argue that any objective external factor prevented his attorney from asserting the claim in Ground One, nor does he argue that his counsel was deficient for failing to appeal the alleged violations of Fed. R. Crim. P. 11(b). See Doc. No. [185].[3] Indeed, Barkley cannot show that his counsel was ineffective for failing to raise the issues in Ground One on direct appeal because they are wholly without merit. See Strickland, 466 U.S. at 694.

The record is clear that no Rule 11 error occurred in this case. The Court informed Barkley of (1) his the right to plead not guilty; (2) his right to a jury trial; (3)

---

[3] To the extent that Barkley's objections could be construed as arguing that his counsel was ineffective for failing to raise Ground Three on direct appeal, the claim would still be procedurally barred. Ground Three would have been barred by Barkley's appeal waiver, and thus his counsel cannot have been ineffective for failing to raise that ground on direct appeal.

11

his right to be represented by counsel; (4) his right to confront and cross-examine adverse witnesses; (5) his right to testify and compel the attendance of witnesses; (6) his right against compelled self-incrimination; (7) the nature of each charge to which he pled guilty; (8) the maximum and minimum penalties possible by law, including fines, supervised release, and special assessments; (9) the possibility of restitution; and (10) the Court's obligation to calculate the guidelines range and consider any possible departures under the Sentencing Guidelines. See Doc. No. [135-3], pp. 5–17; Fed. R. Crim. P. 11(b)(1). The Court also explained that a guilty plea waived these Barkley's trial rights, and the Court repeatedly ensured that Barkley entered his plea freely and voluntarily. See Doc. No. [135-3], pp. 5–7, 17–18; Fed. R. Crim. P. 11(b)(1)(F), (b)(2).

Further, the Court explained that Barkley could be prosecuted for perjury for testifying falsely under oath. See Doc. No. [135-3], pp. 2–4; Fed. R. Crim. P. 11(b)(1)(A). While Barkley baldly asserts that there was no factual basis for his plea, this contention is belied by the record, as discussed in more detail below. In short, Ground One is procedurally defaulted because Barkley did not raise it on direct appeal and he cannot show that his counsel was ineffective for not raising the claims in Ground One because no Rule 11 error occurred in this case; Barkley entered his

plea freely, voluntarily, and knowing full-well the consequences of his plea. Moreover, even assuming any Rule 11 error occurred, Barkley could not show that it affected his substantial rights, because he never asserts that he would have gone to trial. See Fed. R. Crim. P. 11(h); United States v. Dominguez Benitez, 542 U.S. 74, 81–83, 124 S. Ct. 2333, 2339–40, 159 L. Ed. 2d 157 (2004).

**B.   Ground Two**

Barkley raises several objections with respect to the Magistrate Judge's conclusion that the Court should deny the ineffective-assistance-of-counsel claim raised in Ground Two.[4] Barkley asserts that the Magistrate Judge "was required to make findings of facts as to whether or not counsel's performance was deficient." Doc. No. [185], p. 6. He contends that, because the Magistrate Judge did not make findings of fact regarding counsel's allegedly deficient performance, the Magistrate Judge committed Clisby[5] error by not "address[ing] all of the claims presented in [Barkley's §] 2255 motion." Id. pp. 7–8. Barkley is wrong on both counts.

---

[4] As the Magistrate Judge correctly noted, even though Barkley did not raise the ineffective-assistance-of-counsel argument on direct appeal, it is not procedurally defaulted. See Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").

[5] Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992).

The Magistrate Judge did in fact make a finding that Barkley "fails to show that counsel gave him incompetent advice," because Barkley's sworn admissions during the plea hearing belied the self-serving assertions in his § 2255 Motion. See Doc. No. [175], pp. 12–13. Barkley makes no direct objection to this conclusion. See Doc. No. [185]. In any event, the Magistrate Judge was not required to make any findings regarding whether Barkley's counsel was deficient, because the Magistrate Judge concluded that Barkley could not show prejudice. See Doc. No. [175], pp. 13–14; see also Strickland, 466 U.S. at 697; Holladay, 209 F.3d at 1248. Additionally, the very fact that Barkley objects to the denial of his claims refutes his argument that the Magistrate Judge committed Clisby error. See Clisby, 960 F.2d at 938.

Barkley's primary objection appears to be that no evidentiary hearing was held. See Doc. No. [185], pp. 2–3, 7–9. He nowhere addresses the Magistrate Judge's specific reasons for concluding that Barkley's ineffective-assistance-of-counsel claim failed. See id. pp. 1–9; see also Doc. No. [175], pp. 11–14. The Magistrate Judge properly concluded an evidentiary hearing was not required, because the record conclusively shows that Barkley is not entitled to post-conviction relief. See Anderson, 948 F.2d at 706. First, the Magistrate Judge correctly concluded that Barkley "fails to show that counsel gave him incompetent advice," because Barkley's

statements that he made under penalty of perjury at his plea hearing contradict his belated, self-serving allegations. See Doc. No. [175], pp. 12–13; see also Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977)("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Barkley also cannot show that his counsel was deficient for failing to pursue the motion to suppress his confession. In order to show that his counsel performed deficiently for failing to pursue the motion to suppress, Barkley must show that "no competent attorney would think a motion to suppress would have failed." Premo v. Moore, 562 U.S. 115, 124, 131 S.Ct. 733, 741, 178 L.Ed.2d 649 (2011). Barkley's motion to suppress faced formidable obstacles, to say the least. Barkley signed an "Advice of Rights" form, also signed by two witnesses, indicating that he had been advised of his rights, and that he willingly waived them and agreed to answer questions without his attorney present. Doc. No. [135-1]. The FBI investigation report of the interview with Barkley, recorded shortly after the interview, also indicated that Barkley was given a Miranda warning, and agreed to speak to the agents without an

attorney present. See Doc. No. [193-2], p. 2. Against this record, Barkley's only evidence that his confession was involuntary is his own self-serving statement that he was "coerced." Barkley's counsel did not perform deficiently because Barkley cannot show that "no competent attorney" would have decided to abandon the motion to suppress. See Premo, 562 U.S. at 124.

Even if Barkley had succeeded on the motion to suppress, he cannot show that his counsel performed deficiently for abandoning the motion and advising Barkley to plead guilty because the Government possessed ample evidence other than the confession with which to convict Barkley at trial. Months before Barkley was ever arrested, two of his co-defendants were arrested and gave sworn statements to the FBI identifying Barkley as being involved in the robberies. See Doc. No. [148], p. 4–5. In addition to his own co-defendants testifying against him, the Government would have presented the testimony of the McDonald's employees who were robbed and held at gunpoint, as well as surveillance footage corroborating their testimony and showing Barkley. See Doc. No. [135-3], pp. 19–21. The similar *modus operandi* of the robberies—e.g. climbing in through the drive-through window—and the fact that they occurred on the same night would have demonstrated that Barkley was involved in both robberies, securing his conviction on all counts.

Barkley received a tremendous benefit for his decision to plead guilty and abandon the motion to suppress. By foregoing a trial and accepting responsibility for his crimes, Barkley reduced his offense-level by 3, thereby reducing the high-end of his guidelines range by 11 months and the low-end by 9 months. See Doc. No. [132], p. 2–3. Much more critically, Barkley's decision to plea dramatically reduced the possible sentence he faced because the Government agreed to dismiss Counts One, Two, and Three of the indictment. See Doc. No. [89-1], p. 5. By avoiding conviction on all counts, including Count Three for discharging a firearm during and in relation to a crime of violence, Barkley's total-sentence was 28 years less than it would have been. See 18 U.S.C. § 924(c)(1)(A)(iii), (c)(1)(C)(i).

"Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." Premo, 562 U.S. at 124. Based on the benefit Barkley received from the plea bargain and the weakness of his motion to suppress, he cannot show that his attorney exhibited "manifest deficiency in light of the information then available." See id. at 125. Therefore, he cannot show that his attorney performed inadequately by advising him to plead guilty and abandon the motion to suppress.

In addition to being unable to show that his counsel performed deficiently, Barkley cannot show that he was prejudiced. As noted above, even if Barkley had succeeded on his motion to suppress his confession, the Government possessed more than enough evidence to convict him at trial.[6] By deciding to plead guilty, Barkley was not prejudiced at all, but rather benefitted tremendously — he received a sentence that was at least 28 years less than what he would have received if he had gone to trial. Simply put, Barkley cannot show prejudice because he does not meet his affirmative burden of showing that, but for his counsel's alleged errors, the outcome of the proceeding would have been different. Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000). Because the record conclusively shows that Barkley is not entitled to post-conviction relief, no evidentiary hearing is necessary. See Anderson, 948 F.2d at 706.[7]

---

[6] The Court notes that Barkley never so much as asserts that he would have refused to plead guilty and gone to trial. See Doc. No. [185]. For this reason alone, his ineffective-assistance-of-counsel claim fails. See Hill v. Lockhart, 474 U.S. 52, 57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985)

[7] Although not mentioned in his objections, Barkley also argued that his counsel was ineffective for failing "to explain each and every fundamental constitutional right" that Barkley waived by pleading guilty, and failing "to make a timely objection to the factual basis [for the plea], on the grounds that it was inadequate." Doc. No. [130], pp. 13–14. As the above discussion demonstrates, the record conclusively shows that Barkley was advised of the rights he waived by pleading guilty, and the factual basis for his plea was more than adequate.

### C.   The *Johnson* Claim

Finally, the <u>Johnson</u> claim Barkley seeks to add in his second Motion to Amend his §2255 Motion (Doc. No. [182]) is foreclosed by binding Eleventh Circuit precedent. Barkley was not sentenced under the Armed Career Criminal Act, at issue in <u>Johnson</u>. Rather, his sentence was enhanced because a firearm was brandished during the armed robbery. <u>See</u> Doc. No. [135-3], pp. 15–16. As the Eleventh Circuit has held, the Court need not decide whether <u>Johnson</u>'s logic applies to the § 924(c)(3) residual clause, because Barkley's "conviction for aiding and abetting a Hobbs Act robbery, which was charged in the same indictment as, and makes up the basis for, [Barkley's] § 924(c) count, clearly qualifies as a "crime of violence" under the use-of-force clause in [18 U.S.C.] § 924(c)(3)(A)." <u>In re Colon</u>, No. 16-13021-J, 2016 WL 3461009, at *3 (11th Cir. June 24, 2016); <u>see also</u> <u>In re Saint Fleur</u>, No. 16-12299-J, 2016 WL 3190539 (11th Cir. June 8, 2016). Thus, the <u>Johnson</u> claim Barkley seeks to raise must be denied.

### IV.   CONCLUSION

Barkley's Second Motion to Amend his §2255 Motion (Doc. No. [181]) is **GRANTED**. However, his § 2255 Motion, as amended, (Doc. Nos. [130], [143], [182]) must be **DENIED** on all grounds, for the reasons given above. Because Barkley has

not made a substantial showing of the denial of a constitutional right, the Court also **DENIES** him a Certificate of Appealability. See 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003).

**IT IS SO ORDERED**, this 18th day of August, 2016.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)